IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AFENTRA BANDOKOUDIS,

       *Plaintiff,*

  vs.

ENTERCOM KANSAS CITY, LLC d/b/a
KRBZ-FM,

       *Defendant.*

Case No. 2:20-CV-02155-EFM-GEB

## MEMORANDUM AND ORDER

Plaintiff Afentra Bandokoudis filed this action against her former employer, Defendant Entercom Kansas City, LLC,[1] alleging various Equal Pay Act and Title VII violations. Now before the Court is Defendant's Motion for Summary Judgment (Doc. 93) and Plaintiff's Motion to Strike Summary Judgment Affidavits (Doc. 106). For the reasons discussed below, the Court grants in part and denies in part Plaintiff's Motion and denies Defendant's Motion.

## I.      Factual and Procedural Background[2]

Plaintiff began her employment with Defendant in 2002, working as on-air talent at Defendant's Kansas City radio station, KRBZ, "96.5 The Buzz." Plaintiff continued her

---

[1] Entercom Kansas City, LLC, is now known as Audacy Kansas, LLC.

[2] In accordance with summary judgment procedures, the Court has laid out the uncontroverted material facts in the light most favorable to the non-moving party.

employment with Defendant under multiple employment contracts through August 2018—when Defendant elected not to renew Plaintiff's employment contract.  Throughout her employment, Plaintiff received a base salary, which increased with each subsequent contract, and was eligible for bonuses based on her ratings.  During that time, Defendant also employed Johnny Dare[3] as host of a morning radio show on KQRC "98.9 The Rock!"  Although the parties agree that Plaintiff's and Dare's shows aired in the Kansas City market during the same morning daypart and that Dare was paid more than Plaintiff, they agree on little else.

Plaintiff contends that her position was substantially equal to Dare's position.  She asserts she and Dare were head-to-head competitors, their duties and responsibilities were the same, the skills and effort required to host the shows were the same, the supervision of the shows was essentially the same, and the conditions under which they performed their work were the same. Defendant disputes virtually all of Plaintiff's contentions.  Defendant asserts that Plaintiff's position was not substantially equal to Dare's, that Plaintiff and Dare were not head-to-head competitors, and that their duties and responsibilities were not the same.  Defendant further asserts that Plaintiff had attendance issues requiring additional supervision not required by Dare.

Although the parties dispute the extent of Plaintiff's attendance issues, the parties do not dispute that Entercom's Operations Manager, Bob Edwards,[4] had several conversations with Plaintiff about her attendance in 2017.  On October 26, 2017, Edwards sent Plaintiff an email summarizing a meeting they had that day.  Edwards summarized that "[t]he primary issue we

---

[3] It appears from the record that Johnny Dare's legal name is John Caprefoli, but because the parties refer to him as Johnny Dare throughout their argument, the Court will also do so.

[4] It appears from the record that Bob Edwards's legal name is Robert Watford, but because the parties refer to Watford as Bob Edwards throughout their motions, the Court will also do so.

discussed is having you come to work on time" and added that Plaintiff would be allowed to pre-tape the 6 a.m. hour of her show but would be required to arrive at work by 7 a.m. on Mondays, Tuesdays, Thursdays, and Fridays.  On Wednesdays, Plaintiff would also be allowed to prerecord the 7 a.m. hour and part of the 8 a.m. hour of her show.  Edwards stated that his expectation was "that at some point in the near future, you will be live in the studio at 7 a.m. Monday through Friday."

Plaintiff responded to the email the next day.  In her email, she noted that Edwards had failed to include other topics discussed at the meeting, including Plaintiff's reported complaints that she was being held to different standards than other staff members and that she was being paid less than "everyone else."  Plaintiff also stated in the email that she believed she was being treated differently because she was a woman and that "the decisions are made by guys for guys."

On November 2, 2017, Edwards sent Plaintiff an email stating that he was disappointed to see Plaintiff show up at 8:45 a.m. after their conversation the prior week.  On November 7, 2017, Plaintiff had a meeting with Edwards, Entercom's Vice President/Market Manager, and Entercom's Business Administrator to discuss Plaintiff's attendance.  Plaintiff left the meeting with the understanding that she could be terminated if she did not correct her attendance issues. After the meeting, Edwards sent Plaintiff an email stating that, as discussed in the meeting, Plaintiff's permission to prerecord the 6 a.m. to 7 a.m. hour would end on December 31, 2017, and that Plaintiff would be expected to be live, in studio, and on-air from 6 a.m. to 10 a.m. Monday through Friday.  Around that time, Edwards began keeping a log of Plaintiff's arrival times to correlate back to Plaintiff's ratings.  The remaining facts regarding Plaintiff's attendance are largely in dispute.

Defendant alleges that Plaintiff often failed to show up in the 7:00 a.m. hour. It further argues that it decided not to renew Plaintiff's contract because her poor attendance caused declining ratings. Plaintiff does not dispute that she sometimes failed to arrive in the 7:00 a.m. hour but asserts that, until 2018, she was allowed to pre-tape the first hour of her show. She further asserts that Edwards's records of her attendance are inaccurate and that Defendant's focus on her attendance was part of a broader scheme of retaliation and gender-based discrimination, as other male radio hosts at Entercom were allowed to pre-tape parts of their shows. Plaintiff also alleges that she was subjected to other retaliatory actions for making her discrimination complaint, such as removal as an administrator from the station's social media accounts, deletion of posts promoting her show, and a cessation of marketing of her show by the sales department—all resulting in the declining ratings cited by Defendant. Defendant, unsurprisingly, disputes these allegations.

## II.      Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[5] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[6] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[7] If the movant carries its initial burden, the nonmovant may not simply rest on its pleadings but

---

[5] Fed. R. Civ. P. 56(a).

[6] *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citations omitted).

[7] *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citations omitted).

must instead set forth specific facts showing a genuine issue for trial as to those matters for which it carries the burden of proof.[8]   These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[9]   The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[10]

### III.    Analysis

### A.    Plaintiff's Motion to Strike Defendant's Summary Judgment Affidavits

As a preliminary matter, Plaintiff has moved to strike two affidavits produced by Defendant in support of its motion for summary judgment.  Plaintiff first requests that the Court strike the affidavit of Phillip Brouillette, Entercom's General Sales Manager.  Plaintiff asserts that Entercom failed to disclose Brouillette as a witness in discovery.  In response, Entercom does not assert that it properly disclosed Brouillette, but instead produces new affidavits of previously disclosed witnesses containing the same testimony as Brouillette's affidavit.  Defendant then argues that its failure to disclose Brouillette is harmless because Defendant's other witnesses have competently testified to the same matters contained in Brouillette's affidavit.

Rule 37(c)(1) states, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Although courts enjoy "broad discretion" in deciding whether a violation is justified

---

[8] *Id.* (citing *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)).

[9] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

[10] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

or harmless, the Tenth Circuit has listed several factors that a district court "*should* consider in exercising its discretion."[11]   These factors are: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."[12]

Defendant has provided no explanation at all for its failure to previously disclose Brouillette as a witness, so the Court has no basis to conclude that Defendant's failure was substantially justified.  Further, inclusion of Brouillette's affidavit at this late stage surely surprises and prejudices Plaintiff in that Brouillette was never disclosed to Plaintiff in any form, despite Brouillette's testimony covering disputed issues central to Plaintiff's claim.  With discovery long since closed and trial less than a month away, Plaintiff is left with no ability to explore or rebut Brouillette's testimony.   Although the Court cannot conclude on the evidence before it that Defendant's failure to disclose was based on bad faith or willfulness, the lack of explanation provided by Defendant and the undoubted prejudice to Plaintiff warrants exclusion of Brouillette's affidavit.

The Court now turns to Defendant's proffered substitute affidavits.  Defendant's proffered affidavits include the testimony of its Operations Manager, Bob Edwards, and its Vice President/Market Manager, David Alpert.   Edwards's and Alpert's substitute affidavits are identical to Brouillete's affidavit—providing testimony regarding revenue comparisons between Plaintiff and her alleged comparator Johnny Dare.  Plaintiff argues that the cut-and-paste nature of

---

[11] *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1200 (10th Cir. 2017) (citations omitted).

[12] *Id.* (citation omitted).

the affidavits suggests that they are attorney concoctions to be viewed with skepticism.  She further argues that prior deposition testimony of both Edwards and Alpert indicates that they are not competent to testify on the matters to which they testify in their affidavits.  Having reviewed the affidavits provided by Edwards and Alpert, as well as the deposition testimony cited by Plaintiff, the Court concludes that these arguments point more to the weight of the affidavits than their admissibility.  The Court therefore will not strike the substitute affidavits.

Next, Plaintiff moves to strike the affidavit of Roxanne Marati, Entercom's Market Manager.  Defendant's discovery disclosures listed Marati as having information regarding "the current process for determining compensation for [Entercom's] Kansas City employees."  Marati's affidavit provides testimony comparing Plaintiff's and Johnny Dare's ratings between 2009 and 2011.  Plaintiff argues that because Defendant's disclosure included the word "current," Plaintiff did not have sufficient notice that Marati might possess information regarding ratings in an earlier timeframe.  The Court disagrees.  It seems clear that historical ratings would have an impact on current compensation.  Thus, it is reasonable to conclude that a witness possessing information regarding compensation at a radio station would possess information regarding historical ratings data.  Further, Plaintiff does not provide the Court with caselaw in which other courts have required such specificity in discovery disclosures.  The Court therefore will not strike Marati's affidavit.

**B.      Plaintiff's Title VII Pay Discrimination Claim**

Plaintiff alleges that Defendant discriminated against her by paying her substantially less than her male colleagues in violation of Title VII of the Civil Rights Act of 1964 and the Equal

Pay Act.  Defendant moves for summary judgment on both claims.  Because Plaintiff's burden under the two acts is not identical,[13] the Court will analyze the claims separately.

Title VII prohibits sex discrimination in employment, including with respect to compensation.[14]  "To survive summary judgment on a Title VII claim . . . a plaintiff must present either direct evidence of discrimination or indirect evidence" satisfying the *McDonnell Douglas* burden-shifting framework.[15]  Under this framework, "a plaintiff must first 'raise a genuine issue of material fact on each element of the prima facie case.' "[16]  The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision.[17]  Finally, the burden shifts back to the plaintiff to demonstrate that the defendant's reason was pretextual.[18]

### 1.    *Plaintiff's Pay Discrimination Claim*

To establish her prima facie case with regard to her pay discrimination claim, Plaintiff "must show she 'occupie[d] a job similar to that of higher paid males.' "[19]  Although Defendant does not dispute that Dare was paid more than Plaintiff, citing *Sprague v. Thorn Americas, Inc.*,[20] Defendant argues that Plaintiff is not similarly situated to Dare due to differences in Plaintiff's and Dare's ratings and revenue, experience, and job duties and responsibilities.  The Courts finds the

---

[13] *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1311–12 (10th Cir. 2006).

[14] 42 U.S.C. § 2000e-2(a)(1).

[15] *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[16] *Id.* (citation omitted).

[17] *Id.* (citation omitted).

[18] *Id.* (citation omitted).

[19] *Riser v. QEP Energy*, 776 F.3d 1191, 1200 (10th Cir. 2015) (citation omitted).

[20] 129 F.3d 1355 (10th Cir. 1997).

facts of this case distinguishable from those in *Sprague*, however.  In *Sprague*, a female plaintiff compared herself to male managers of other departments, although she was not a manager in her department.[21]  In determining that the plaintiff had failed to establish her prima facie case, the panel noted differences in responsibility, departmental revenue, and experience between the plaintiff and her male comparators.[22]

Turning first to Plaintiff's and Dare's job duties, it is undisputed that Plaintiff and Dare were both "on-air talent," working as hosts for Entercom shows that aired in the Kansas City market during the same morning daypart.  Thus, the difference in title found in *Sprague* does not exist here.[23]  Further, Plaintiff has provided sworn testimony that the duties and responsibilities of Plaintiff's and Dare's shows were the same, that the skills and effort required to hosts the shows were the same, that the supervision of the shows was essentially the same, and that the conditions of Plaintiff's and Dare's employment were the same.

Defendant attempts to blunt these assertions by arguing that Plaintiff's testimony is "self-serving," but this argument is insufficient to overcome Plaintiff's declaration.  "So long as an affidavit is based upon personal knowledge and sets forth facts that would be admissible in evidence, it is legally competent to oppose summary judgment, irrespective of its self-serving nature."[24]  Plaintiff's declaration as to an on-air host's job duties is based on concrete facts within her knowledge as a host of an Entercom morning show—i.e., facts regarding methods of public

---

[21] *Id.* at 1363.

[22] *Id.*

[23] For the same reason, the Court finds Defendant's citation to *Daniels v. UPS*, 797 F. Supp. 2d 1163 (D. Kan. 2011) (finding failure to establish prima facie case where the plaintiff did not perform formal supervisory duties but compared her job to male supervisors) similarly unpersuasive.

[24] *Speidell v. United States*, 978 F.3d 731, 740 (10th Cir. 2020) (quotation and alteration omitted).

engagement, the structure and schedules of Plaintiff's and Dare's shows, and the requirements of in-studio and out-of-studio work. To discount Plaintiff's otherwise undisputed testimony merely because it is "self-serving is to weigh the strength of the evidence or make credibility determinations—tasks belonging to the trier of fact."[25]

Further, Defendant does not provide any testimony controverting Plaintiff's assertions. Although Defendant purports to controvert Plaintiff's statements, it merely cites to its prior statements of fact regarding differences in ratings and revenue between Plaintiff and Dare, controverted facts regarding Plaintiff's performance issues, and statements regarding the importance of hosts providing live content. None of the cited statements directly controvert Plaintiff's assertions. Thus, for purposes of this motion, the Court accepts Plaintiff's assertions regarding the similarities in duties, necessary skills, conditions of employment, and supervision of Plaintiff's and Dare's shows. Because the facts now before this Court demonstrate numerous similarities in Plaintiff's and Dare's positions at Entercom, the Court finds the facts of this case to be materially different from those in *Sprague*. Plaintiff has established her prima facie case.

### 2. *Defendant's Legitimate, Nondiscriminatory Reason*

The Court now turns to Defendant's claim that it had a legitimate, nondiscriminatory reason for the difference in pay. Here, Defendant's burden is "exceedingly light."[26] It "must

---

[25] *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1164 (10th Cir. 2021) (quoting *United States v. $100,120*, 730 F.3d 711, 717 (7th Cir. 2013) with approval). Defendant also argues that Plaintiff's declaration should be disregarded under *Maddy v. Vulcan Materials Co.*, 737 F. Supp. 1528 (D. Kan. 1990). *Maddy* is inapplicable here, however, as the affidavit testimony in *Maddy* directly contradicted prior sworn statements by the same witness. *Id.* at 1532. Although Defendant asserts that Plaintiff's declaration conflicts with her deposition testimony, Defendant fails to cite any such contradictions.

[26] *Sprague*, 129 F.3d at 1363 (citation omitted).

merely proffer non-gender based reasons" for its disparity in pay—it need not prove them.[27]  The Court concludes that Defendant has met this "exceedingly light" burden.  Defendant's Operations Manager testified:

> Considerations for salaries of on-air talent are: ratings performance; how much does the audience care about them; whether they are 'good in the halls'; whether they are dedicated; whether they go the extra mile . . . the client relationships they have, or more specifically the revenue relationships they have; endorsement revenue they generate; whether they are cooperative with Entercom's sales people; if they have an endorsement, is it done in a timely manner so . . . Entercom can bill it; and whether they have a positive attitude.

Although disputed, Defendant has provided testimony that Dare's ratings and revenue were consistently high, resulting in higher revenue than Plaintiff.  It has also provided testimony that Dare was more successful in securing advertisers than Plaintiff.

To satisfy its burden, Entercom "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."[28]  Because a reasonable factfinder could conclude that the difference in pay between Plaintiff and Dare was due to the factors cited by Defendant, Defendant has met its burden.

### 3.    *Plaintiff's Pretext Claim*

Finally, the Court turns to Plaintiff's pretext argument.  Plaintiff may demonstrate pretext "by revealing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason

---

[27] *Id.*

[28] *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275 (10th Cir. 1999) (citation omitted).

unworthy of credence."[29]  Plaintiff has met that burden.  Although Defendant argues throughout its briefing that many factors justify the difference in pay between Plaintiff and Dare, it lacks clear testimony from a decisionmaker stating that these were the reasons for the difference in pay.

Further, it is undisputed that Plaintiff's ratings and audience demographic ranking were consistently high when she entered into her last contract with Entercom.  And the only clear testimony regarding the numerical differences in revenues between Dare and Plaintiff are for years *after* Plaintiff entered her last contract with Entercom—meaning those differences could have no bearing on the decision to pay Plaintiff less than Dare.  The Court therefore concludes that a reasonable factfinder could find that Defendant's explanation for the disparity in pay is unworthy of belief.  Because Plaintiff has met her burden under the *McDonnell Douglas* analysis, her Title VII pay discrimination claim survives summary judgment.

## C.      Plaintiff's Equal Pay Act Claim

 The Equal Pay Act ("EPA") prohibits pay discrimination based on sex.[30]  To establish a prima facie case under the EPA, the plaintiff must demonstrate that (1) she performed work which was "substantially equal to that of male employees considering the skills, duties, supervision, effort and responsibilities of the jobs;" (2) the conditions where the employees performed the work were basically the same; and (3) "male employees were paid more under such circumstances."[31]  "Work is 'substantially equal' for purposes of the EPA if it requires 'equal skill, effort, and

---

[29] *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (citation omitted).

[30] 29 U.S.C. § 206(d).

[31] *Riser*, 776 F.3d at 1196 (citation omitted).

responsibility."[32]  "[J]obs that are merely alike or comparable are not 'substantially equal' for purposes of the EPA," but "insubstantial or minor differences . . . will not render the equal pay standard inapplicable."[33]

If the plaintiff establishes her prima facie case, the burden then shifts to the defendant to establish that its pay differential was premised on a factor other than sex.[34]  To do this, the defendant must show that the disparity is the result of (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a factor other than sex.[35]  Thus, a defendant "must submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons *could* explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity."[36]  "At the summary judgment stage, this means an employer must prove at least one affirmative defense so clearly that no rational jury could find to the contrary."[37]

### 1.    *Plaintiff's Prima Facie Case*

First, the Court notes that Defendant appears only to challenge the first element of Plaintiff's prima facie case—i.e., that Plaintiff's and Dare's work at Entercom was substantially equal.  Although the Court recognizes that Plaintiff's burden under the EPA differs from that of a

---

[32] *Id.* (quoting 29 U.S.C. § 206(d)(1)).

[33] *Id.* (citations and alteration omitted).

[34] *Mickelson*, 460 F.3d at 1311.

[35] 29 U.S.C. § 206(d)(1); *see also Riser*, 776 F.3d at 1198.

[36] *Riser*, 776 F.3d at 1198 (citation and internal quotation marks omitted).

[37] *Id.* (citation and internal quotation marks omitted).

Title VII pay discrimination claim,[38] the factual disputes remain the same.  As discussed above, Plaintiff has provided testimony outlining concrete similarities between the skills, duties, supervision, effort, and responsibilities required by Plaintiff's and Dare's employment with Entercom.  Defendant purports to dispute many of these facts, but issues of conflicting testimony and credibility must be examined in the crucible of a trial—not at summary judgment.

Defendant also argues that differences in Plaintiff's and Dare's ratings, revenue, and experience show that Plaintiff's job was not substantially equal to Dare's, but these issues go to Entercom's defense, not Plaintiff's prima facie case.[39]  Further, although Defendant cites a Ninth Circuit case[40] and *Sprague*[41] for the proposition that the court may consider experience and revenue at the prima facie stage, the Court finds those cases distinguishable due to the sheer number of facts still in dispute in this matter.  The substantially equal standard "requires a practical judgment on the basis of *all the facts* and circumstances of a particular case."[42]  Because Plaintiff has brought forward specific facts showing a genuine issue for trial, she has established her prima facie case under the EPA.

---

[38] *Mickelson*, 460 F.3d at 1311–12.

[39] *See Nazinitsky v. INTEGRIS Baptist Med. Ctr., Inc.*, 852 F. App'x 365, 368 (10th Cir. 2021) (noting that the district court had assumed arguendo that the plaintiff had made her prima facie case and addressing the plaintiff's challenges to the employer's EPA defenses).

[40] *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313 (9th Cir. 1994) (comparing the head coaching positions for the men's and women's basketball teams).

[41] 129 F.3d at 1355.

[42] *EEOC v. Cent. Kan. Med. Ctr.*, 705 F.2d 1270, 1272 (10th Cir. 1983) (quotation omitted and emphasis added), *overruled on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988).

## 2.    *Defendant's Affirmative Defenses*

Because Plaintiff has established her prima facie case, the burden now shifts to Defendant to establish that its pay differential was premised on a factor other than sex.[43]   Here, Defendant argues that the pay differential between Plaintiff and Dare is based on (1) a system measuring quantity or quality of production and (2) factors other than sex.   Generally, a system measuring quantity or quality of output refers to "a bona fide incentive system," such as an equal dollar per unit compensation rate or commission program.[44]   Although "[t]here is no discrimination when one employee produces more and is therefore compensated more," a pay differential is not justified where "women had to produce more work in order to be paid the same as men."[45]

First, in arguing that Plaintiff's pay was based on a system measuring quality or quantity of output, Defendant cites to no real system.   Instead, Defendant cites its Operations Manager's amorphous explanation of what he considers in determining salaries[46] and argues that Plaintiff's performance issues cost Defendant $1,000,000 and hindered her ratings and ability to drive revenue.   These arguments fail to provide the Court with a basis to determine that Plaintiff and Dare's pay differential was based on a bona fide incentive system.

---

[43] *Mickelson*, 460 F.3d at 1311.

[44] *See Fusco v. Ins. Plan. Ctr.*, 2008 WL 11442032, at *11 (D. Kan. 2008) (citing *Bence v. Detroit Health Corp.*, 712 F.2d 1024, 1029 (6th Cir. 1983)) (internal quotation marks omitted).

[45] *Id.* at *11–12 (citing *Bence*, 712 F.2d at 1029).

[46] Def.'s Mem. in Supp., Doc. 94, ¶ 58 ("Considerations for salaries of on-air talent are: ratings performance; how much does the audience care about them; whether they are 'good in the halls'; whether they are dedicated; whether they go the extra mile . . . the client relationships they have, or more specifically the revenue relationships they have; endorsement revenue they generate; whether they are cooperative with Entercom's sales people; if they have an endorsement, is it done in a timely manner so . . . Entercom can bill it; and whether they have a positive attitude.").

Further, after Plaintiff noted in her response brief that Defendant had failed to outline an incentive system with predetermined criteria, Defendant argued that the criteria for Plaintiff's base pay and bonuses were clearly outlined in her employment agreements with Entercom. But Defendant's evidence points only to the criteria used in determining Plaintiff's pay. It says nothing of the criteria used to set Dare's pay. Without evidence of a system applied equally to Plaintiff *and* Dare, Defendant fails to meet its burden with respect to this affirmative defense.

Next, the Court turns to Defendant's argument that it relied on factors other than sex— Plaintiff's market rate and poor performance. As noted by Plaintiff, this defense was not included in the Pretrial Order, and Defendant does not address this omission in its reply brief. The defense is therefore waived.[47] Defendant's request for summary judgment as to Plaintiff's Equal Pay Act claim is denied.

## C.   Plaintiff's Title VII and Equal Pay Act Retaliation Claims

Plaintiff also brings claims for retaliation under Title VII and the Equal Pay Act. Both claims are analyzed under the *McDonnell Douglas* framework.[48] Thus, Plaintiff must first demonstrate a prima facie case of retaliation.[49] If she does so, the burden shifts to Defendant to articulate a legitimate and nondiscriminatory reason for its decision.[50] The burden then shifts back

---

[47] *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002).

[48] *See Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014) (analyzing Title VII retaliation claim under *McDonnell Douglas* framework); *see also Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir. 1984) (noting that the Fair Labor Standards Act, of which the EPA is a part, prohibits retaliation); *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (applying *McDonnell Douglas* analysis to FLSA retaliation claim).

[49] *Estate of Bassatt v. Sch. Dist. No. 1*, 775 F.3d 1233, 1238 (10th Cir. 2014).

[50] *Id.*

-16-

to Plaintiff to demonstrate that there is a genuine dispute of material fact whether Defendant's reason for its adverse action is merely pretext.[51]

### 1.    *Plaintiff's Prima Facie Case*

To establish her prima facie case of retaliation, Plaintiff must demonstrate that "(1) [s]he engaged in protected activity; (2) [s]he suffered an adverse employment action; and (3) there is a causal connection between [her] protected activity and the adverse employment action."[52]   The Court concludes that Plaintiff has met this burden.

First, it is undisputed that Plaintiff emailed Entercom's Operations Manager on October 27, 2017, noting that she had reported complaints to him the prior day that she was being held to different standards than other staff members, that she was being paid less than "everyone else," and that she believed this differential treatment was because of her sex.   Although Defendant argues in a one-off sentence that Plaintiff cannot establish that she engaged in protected action, it provides no basis in law for this assertion.   Further, the Tenth Circuit has made clear that an employee's communication to her employer that she believes "the employer has engaged in a form of employment discrimination . . . virtually always constitutes the employee's opposition to the activity."[53]   Plaintiff has met this element of her prima facie case.

Second, Defendant argues that Plaintiff has failed to establish adverse action.   The anti-retaliation provision of Title VII protects employees from "materially adverse" actions, i.e., actions that "might 'dissuade a reasonable worker from making or supporting a charge of

---

[51] *Id.*

[52] *Davis*, 750 F.3d at 1170 (citation omitted).

[53] *Hansen v. SkyWest Airlines*, 844 F.3d 914, 926 (10th Cir. 2016) (citation omitted).

discrimination.' "[54]  It is undisputed that Defendant elected not to renew Plaintiff's contract in 2018.  Although Defendant asserts that its decision not to renew Plaintiff's contract was not an adverse action because it was a consequence of Plaintiff's poor performance, this argument misses the mark.  Defendant's reasoning for its action is irrelevant at the prima facie stage of the *McDonnell Douglas* inquiry.[55]  Because a reasonable factfinder could conclude that non-renewal of an employment contract is a materially adverse action,[56] Plaintiff has met the second element of her prima facie case.

Third, Defendant argues that the gap between Plaintiff's October 2017 complaint and the August 2018 non-renewal fails to establish the causal connection necessary for Plaintiff's prima facie case.  "A causal connection is established where the plaintiff presents 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.' "[57]  "However, unless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation."[58]

---

[54] *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1213 (10th Cir. 2008) (citation and alteration omitted).

[55] *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1152 (10th Cir. 2005) ("[The personnel director's] reasoning is, however, irrelevant at this point of the *McDonnell Douglas* inquiry.  The second part of the *McDonnell Douglas* test is where [personnel director] has the opportunity to explain the reasons for her actions.") (citations omitted).

[56] *Hale v. Emporia State Univ.*, 2018 WL 5884543, at *12 (D. Kan. 2018).

[57] *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) (citation omitted).

[58] *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citing *Conner*, 121 F.3d at 1395).

Because Plaintiff made her discrimination complaint over nine months before her non-renewal, temporal proximity alone cannot establish her prima facie case of retaliation.[59]  But, a "pattern of retaliatory conduct" beginning soon after an employee's protected activity may support an inference of retaliation, even though it "only culminates later in actual discharge."[60]  Here, it is undisputed that Defendant's Operations Manager emailed Plaintiff just six days after her October complaint stating that Plaintiff's "continual absenteeism" was having a "negative impact" on her show's ratings.  Five days later, on November 7, Plaintiff had a meeting with the Operations Manager, Entercom's Vice President, and Entercom's Human Resources representative, in which Plaintiff was that told her previously granted permission to prerecord her show would end at the end of the year.  Around the same time, the Operations Manager began tracking Plaintiff's attendance.

Although disputed, Plaintiff alleges that the Operations Manager's tracking of her attendance was inaccurate, that she was removed as an administrator from Entercom's social media account, that her social media posts promoting her show were deleted, that the program manager stopped booking concerts, and that the sales department stopped marketing her show.  She argues that these acts contributed to the decline in ratings used as justification for the non-renewal of her contract and were a means of pushing her out because of her sex discrimination complaint.

Viewing the facts in the light most favorable to the non-moving party, the Court agrees that a reasonable factfinder could conclude that Defendant's actions closely following Plaintiff's

---

[59] *See id.*  ("By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation.") (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997)).

[60] *See Marx v. Schnuck Mkts.*, 76 F.3d 324, 329 (10th Cir. 1996).

discrimination complaint constituted a pattern of retaliatory conduct, ultimately culminating in the non-renewal of Plaintiff's contract.  Plaintiff has established her prima facie case.

### 2.      *Defendant's Legitimate, Nondiscriminatory Reason*

Although Plaintiff has established her prima facie case, Defendant has produced a legitimate, nondiscriminatory reason for its actions.  Defendant asserts that Plaintiff's chronic attendance issues resulting in declining ratings led to its decision not to renew Plaintiff's contract.  This is undoubtedly a legitimate, nondiscriminatory reason to track attendance and to decline to renew an employment contract.[61]  The burden now shifts back to Plaintiff to establish pretext.

### 3.      *Plaintiff's Pretext Claim*

The Court again concludes that Plaintiff has satisfied her pretext burden.  Viewing the facts in the light most favorable to Plaintiff, there are genuine questions of fact concerning Defendant's motivation in removing Plaintiff's permission to pre-tape her show, tracking Plaintiff's attendance, and in taking other actions regarding the marketing of Plaintiff's show.  These are issues clearly designed for trial.  Summary judgment is not appropriate as to Plaintiff's retaliation claims.

### D.      **Plaintiff's Title VII Disparate Treatment Claim**

The Court briefly notes that Plaintiff also asserts a Title VII disparate treatment claim, alleging that Defendant discriminated her based on her gender by (1) not allowing her to pre-tape segments of her show while allowing male colleagues to do so, and (2) tracking Plaintiff's arrival times, but not the arrival times of male employees.  Defendant did not address this claim in its Motion for Summary Judgment.  Although Defendant now argues in its reply brief that its

---

[61] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997) (holding that an employer met its burden of offering a legitimate reason for the monitoring of its employee's attendance and her eventual termination where it asserted that the employee's "level of unscheduled absenteeism was unacceptable and detrimental to its operations").

explanations regarding pre-taping and attendance tracking apply equally here, "a party waives issues and arguments raised for the first time in a reply brief." [62]  The Court therefore will not entertain argument on this claim.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Strike Summary Judgment Affidavits (Doc. 106) is GRANTED in part and DENIED in part.  The Court strikes the affidavit of Phillip Brouillette but does not strike the affidavit of Roxanne Marati.  The Court will allow the use of the substitute affidavits of Bob Edwards and David Alpert.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Doc. 93) is DENIED.

IT IS SO ORDERED.

Dated this 9th day of May, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[62] *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) (citation omitted).